**In re Arnold Wayne BESWICK and Evelyn Mae Beswick, Debtors.**

**No. 89 B 30265.**

United States Bankruptcy Court, N.D. Illinois, W.D.

March 23, 1989.

901

Benjamin P. Hyink, Chicago, Ill., for debtor.

Terry M. Giebelstein, Davenport, Iowa, for Clinton Nat. Bank.

Corri D. Fetman, Chicago, Ill., for John Deere Co.

John McKenzie, Asst. U.S. Atty., for Farmer's Home Admin.

Mary P. Gorman, Rockford, Ill., for Chapter 12 trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on Motions to Dismiss filed by Clinton National Bank (Clinton) and John Deere Company (Deere). The Farmers Home Administration (FmHA) and the Chapter 12 Trustee have not filed written Motions, but join with Clinton and Deere in seeking dismissal of this case. The Debtors, Arnold and Evelyn Beswick, are represented by Attorney Benjamin P. Hyink. Clinton is represented by Attorney Terry M. Giebelstein. Deere is represented by Attorney Corri D. Fetman. FmHA is represented by Assistant U.S. Attorney John McKenzie. The Chapter 12 Trustee is represented by Attorney Mary P. Gorman.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

The Debtors are engaged in a farming operation consisting primarily of raising crops and feeding cattle. The Debtors encountered financial difficulty which led to a state court suit for Foreclosure of Mortgage and Security Agreements filed by Clinton on September 21, 1987. A hearing in the foreclosure case was scheduled for October 9, 1987. On October 8, 1987, the Debtors filed a petition under Chapter 12 of the Bankruptcy Code.

Almost ten months later, on July 31, 1988, the Debtors filed a Plan of Reorganization. Several Objections to Confirmation of the Plan were made and after negotiations between the parties an Amended Plan was filed.

On December 7, 1988, at the hearing on Confirmation, a Second Amended Plan was submitted. Objections to the Second Amended Plan were made by Clinton, Deere and FmHA primarily on the basis of feasibility. Trial of the Objections was heard on December 7, 1988, after which the Court took the issues under advisement.

In its Memorandum Opinion and Order of December 28, 1988, denying Confirmation of the Debtors' Second Amended Plan of Reorganization, the Court set out several factors which weighed heavily on the Court's decision and need not be restated in detail here. The general concern, however, was the Debtors' inability to make payments under the Plan. The cash flow from the grain operation was not sufficient to fund debt repayment on the Debtors' secured obligations, even after the parties had stipulated to a fair market value of the

Debtors' property significantly below the amount of the debt owed. The cattle feeding operation was non-existent for almost a year and it appeared that the market would not support a cattle feeding operation of the size necessary to sufficiently fund debt repayment.

Thereafter, the Debtors filed a Motion to Extend Time to File a Third Amended Plan of Reorganization. At the same time, on January 9, 1989, the Debtors' original attorney filed a Motion to Withdraw from the case. On January 20, 1989, a hearing was held on the pending Motions. Clinton, Deere and FmHA resisted the Debtors' Motion to Extend Time, citing as grounds the continuing deterioration of their collateral and the inability of the Debtors to present any Plan which could meet the feasibility requirements of Chapter 12. The Court denied the Debtors' Motion to Extend Time, granted the Motion for Withdrawal of Counsel, and dismissed the case. The Court further Ordered that the Order of Dismissal would not become effective until January 27, 1989. The effective date of the Order of Dismissal ran and the case was dismissed without further Order of Court.

In early February, Attorney Benjamin Hyink filed an Application for Substitution of Counsel and, on behalf of the Debtors, an Emergency Motion to Amend Judgment Dismissing Debtors' Chapter 12 Bankruptcy Petition Pursuant to Bankruptcy Rule 9023, or in the Alternative, Bankruptcy Rule 9024. The Debtors sought to vacate the Order of Dismissal of the Chapter 12 case and to be granted leave to file a Third Amended Plan within sixty days. Clinton and Deere filed Objections to the Debtors' Motion on the grounds that the Debtors could not present a feasible Plan of Reorganization.

At the hearing on the Debtors' Motion, the Court made several observations, which are a part of the record, concerning the propriety of the Debtors' Motion and the phenomenon of serial filings. The Debtors chose to withdraw their Motion to Amend Judgment.

Clinton then rescheduled a hearing in the pending state court foreclosure action for February 22, 1989. In the meantime, Deere filed a state court action to replevy its collateral which was also to be heard on February 22, 1989. The Debtors filed a second Chapter 12 Petition on February 21, 1989, and shortly thereafter, a Motion for Extension of Time to file Additional Schedules. In response, Clinton and Deere filed Motions to Dismiss, which are presently before the Court.

At the hearing on these Motions, Clinton, Deere and FmHA argued that the Debtors' case should be dismissed on the grounds that the Chapter 12 petition was not filed in good faith and that they were not receiving adequate protection for the diminution in value of their collateral. The Court took under advisement the threshold issue of whether the case should be dismissed because the second petition was not filed in good faith.

### DISCUSSION

The analysis of the issue begins with Section 1208(c) of the Bankruptcy Code, which allows the Court, on a motion by a party in interest, to dismiss a case for "cause" and sets out a nonexhaustive list of factors which constitute "cause."

Two relevant provisions are:

(1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;

\* \* \* \* \* \*

(9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. 11 U.S.C. Section 1208

■ Several courts have interpreted these provisions to include, as cause, the lack of good faith in filing a Chapter 12 petition. *See In re Galloway Farms, Inc.,* 82 B.R. 486 (Bankr.S.D.Ia.1987). *See In re Turner,* 71 B.R. 120 (Bankr.D.Mont.1987), and *In re Hyman,* 82 B.R. 23 (Bankr.D.S.C. 1987). Thus, good faith in filing the Chapter 12 petition is a prerequisite to the Debtors maintaining this case.

\* \* \* \* \* \*

Bankruptcy Courts are increasingly confronting the good faith filing issue in repeat-filing cases. Some cases have involved the filing of a Chapter 13 or Chapter 12 petition to amortize debts which were not discharged in a prior Chapter 7, *In re Warren*, 89 B.R. 87 (9th Cir.BAP 1988); *In re Diego*, 6 B.R. 468 (Bankr.N.D.Cal.1980) or to cure mortgage arrearages on debts which were discharged in a prior Chapter 7 case, *In re Russo*, 94 B.R. 127 (Bankr.N.D. Ill.1988), *In re Hagberg*, 92 B.R. 809 (Bankr.W.D.Wis.1988), *In re Ligon*, 97 B.R. 398 (Bankr.N.D.Ill.1989). These cases have occurred so frequently that the phrases "Chapter 20" and "Chapter 19" have become common expressions in bankruptcy.

Other scenarios include the maintainance of simultaneous bankruptcy cases, *In re Fulks*, 93 B.R. 274 (Bankr.M.D.Fla.1988), *In re Tauscher*, 26 B.R. 99 (Bankr.E.D. Wis.1982); repetitive filings in a short period of time, *In re McKillips*, 72 B.R. 565 (Bankr.N.D.Ill.1987) (where a debtor in this Division filed successive cases under Chapters 13, 12 and 11 in less than one year), *In re Kinney*, 51 B.R. 840 (Bankr.C.D.Cal. 1985), *In re Jackson*, 91 B.R. 473 (Bankr.N. D.Ill.1988); and the filing of subsequent cases by members of the same family, with the same assets, *In re Wentworth*, 83 B.R. 705 (Bankr.D.N.D.1988).

Not surprisingly, courts are split as to whether repeat filings are permissible under the Bankruptcy Code. Several courts consider repeat filings to be an abuse of both the Bankruptcy Code and the creditors' rights under state law. *See In re Russo*, supra, *In re Jackson*, supra, and *In re Heywood*, 39 B.R. 910 (Bankr.W.D.N.Y. 1984). Other courts have found that nothing in the Bankruptcy Code specifically prevents such action by debtors. *In re Ligon*, supra, *In re Metz*, 820 F.2d 1495 (9th Cir. 1987).

*    *    *    *    *    *

The circumstances addressed in all of the cases cited above are somewhat different, however, from those we find here, where a prior Chapter 12 case was dismissed after lengthy and concerted efforts by the debtor to achieve confirmation, and after a full hearing on the merits of the proposed Plan. Many of the cases dealing with repeat filings do not involve a situation in which the issue of feasibility has been contested and fully litigated, as here.

Several courts faced with the good faith issue in the context of Chapter 12 have referred to cases under Chapter 11 for review, in part because of the similarity in the factors which constitute cause for dismissal. *In re Galloway Farms, Inc.*, supra, *In re Turner*, supra. In the context of Chapter 11, courts have found that the dismissal of a case for cause precludes the debtors from refiling another Chapter 11 absent unchanged circumstances. *In re Cassavaugh*, 44 B.R. 726 (Bankr.W.D.Mo. 1984). Where the debtors' motive in filing a second Chapter 11 is merely to forestall creditors' attempts at recovering their collateral without any realistic hope at reorganization, the case should be dismissed on the basis of good faith. *In re Asbridge*, 61 B.R. 97 (Bankr.D.N.D.1986).

■ In the present case, the circumstances warrant the finding that the second Chapter 12 case was not filed in good faith. The Debtors' actions involve several of the "badges" considered by the courts to indicate a lack of good faith. The first Chapter 12 was filed just before a hearing was to be held on Clinton's Complaint to Foreclose its mortgage in state court. That fact, standing alone, would not constitute a lack of good faith; but the Debtors were then granted the opportunity, over more than a year, to present a Plan of Reorganization that met the confirmation requirements of Chapter 12, and they failed to do so. Indeed, the Debtors were granted additional time to file a third Amended Plan, but chose not to do so. Then, after the case was dismissed, and after Deere and Clinton proceeded with actions in state court to recover their collateral, the Debtors obtained new counsel and filed another Chapter 12, thereby imposing additional delays. Under these circumstances, dismissal is warranted. *See In re Euerle Farms, Inc.*, 861 F.2d 1089 (8th Cir.1988).

*    *    *    *    *    *

The Debtors' actions also violate the purpose and spirit of Chapter 12. The legislative history suggests Congress intended Chapter 12 cases to move along expeditiously so as to protect creditors' interests and to preclude dimunition in the value of collateral if a reorganization cannot be achieved. *See In re Pretzer*, 96 B.R. 790 (Bankr.N.D.Ohio 1989), citing 132 Cong. Rec. S15075 (Oct. 3, 1986) (statement of Sen. Grassley). Although courts have recognized that changed circumstances may justify the filing of a second Chapter 12 petition, something more than the mere allegation that circumstances have changed is required. *See In re Hyman*, supra. Changes in circumstances must have some objective significance. No such changes occurred between the date of dismissal, January 27, 1989, and the date of refiling, February 21, 1989. Thus, after failing to achieve confirmation in the first case, the Debtors now seek to commence another case and thereby impose the added delays which a single Chapter 12 case was intended to avoid.

\* \* \* \* \* \*

There is a more fundamental consideration, however, which compels the dismissal of the case on the basis of lack of good faith. By refiling a second case, rather than taking an appeal in the first case, the Debtors are circumventing the appeal process. The Debtors were given the opportunity to present a feasible Chapter 12 Plan in the first case, but could not do so. Even with the creative and resourceful lawyering of the Debtors' original counsel, as evidenced by the Second Amended Plan of Reorganization, a feasible Plan could not be submitted.

█ If the Debtors disagreed with the Court's decision as to the feasibility of their Plan, or the dismissal of the case, they could have taken an appeal. Instead, the Debtors allowed the case to be dismissed, then refiled. The refiling is a circumvention of the normal appeal process available to losing litigants. It is, therefore, an abuse of bankruptcy procedures and remedies, and constitutes a lack of good faith. Creditors may be put to the burdens and costs of defending an appeal, but should not be re-exposed to the burdens and costs which inevitably arise in a completely new bankruptcy case.

█ The refiling of a bankruptcy case, unlike the refiling of a criminal or civil case, is not barred by the doctrines of double jeopardy or res judicata. Therefore, courts must adopt a strict and critical stance toward any maneuvers or schemes which would have the effect of undermining the integrity of the system. *In re Calder*, 93 B.R. 739 (Bankr.D.Utah, 1988). This strict view would apply even if the Debtors' argument as to the competency of original counsel had merit. A party who chooses his counsel freely should be bound by his counsel's actions. *In re Pyramid Energy, Ltd.*, 869 F.2d 1058 (7th Cir.1989).

\* \* \* \* \* \*

Here, a Chapter 12 case has been heard on its merits and decided. Refiling the "same case" is so extraordinary an action that the question is not whether Congress specifically prohibits it, but rather whether Congress specifically permits it. Congress does not.

### CONCLUSION

Based on the foregoing, the Court concludes that the Debtors' Chapter 12 case should be dismissed.

IT IS SO ORDERED.