**In re Bradley FELDMAN a/k/a Brad Feldman, Debtor.**

No. 8–03–87689–511.

United States Bankruptcy Court, E.D. New York.

April 6, 2004.

Roy J. Lester, Esq., Lester & Fontanetta, Garden City, NY, for Randee Feldman.

Jeffrey Zipser, Esq., Carus & Manniello, P.C., Syosset, NY, for J.P. Morgan Chase Bank.

Martin Goldstein, Esq., Rosicki, Rosicki & Associates, Islip, NY, for Allfirst Bank.

Stuart P. Gelberg, Esq., Garden City, NY, for Debtor.

## MEMORANDUM DECISION

### (Re: Motions for Relief from the Automatic Stay)

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

Before the Court are two related motions seeking relief from the automatic stay as to certain property known as 30 Barnyard Lane, Roslyn Heights, N.Y. 11577 (the "Property"). In addition to seeking to lift the automatic stay as to Bradley Feldman (the debtor herein) both motions seek orders which would prevent the automatic stay from reimposing in the event of a future bankruptcy filing by the Debtor or any other person or entity with an interest in the property within 180 days of the date of the lift-stay Order. For the reasons stated below, the motions are granted in part and denied in part.

## FACTUAL BACKGROUND

On November 24, 2003, Bradley Feldman (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

On December 23, 2003, Allfirst Bank f/k/a FMB Bank f/k/a The First National Bank of Maryland ("Allfirst") moved for relief from the automatic stay in order to proceed with mortgage foreclosure and eviction proceedings against the Property. Allfirst holds a note and mortgage executed by Randee Feldman (the debtor's spouse) ("Randee") which granted Allfirst a security interest in the Property.[1] The Debtor apparently resides at the Property but is not obligated on the note and does not own the Property.

According to the Allfirst motion, this is the third bankruptcy filed to stay a scheduled foreclosure sale of the Property. On or about March 12, 2001, Allfirst commenced a foreclosure action and obtained a Judgment of Foreclosure and Sale which was entered in the Nassau County Clerk's Office on or about November 26, 2001. A foreclosure sale was scheduled for February 28, 2002. On February 25, 2002, three days before the scheduled sale, Randee filed a Chapter 13 petition. That case was dismissed by Court Order, dated August 1, 2002, due to Randee's failure to provide documents to the Chapter 13 Trustee. Two months later, on October 11, 2002, Randee filed a second Chapter 13 petition which stayed the foreclosure sale scheduled for October 15, 2002. That case was dismissed by Court Order, dated July 16, 2003, due to Randee's failure to commence payments to the Chapter 13 Trustee and her failure to attend the meeting of creditors required by 11 U.S.C. § 341.

The instant Chapter 7 petition was filed by Bradley Feldman on November 24, 2003. According to Allfirst, this was just one day before the third scheduled foreclosure sale. Because of the previous filings by Randee, and the timing of the filings on the eve of foreclosure, Allfirst requested relief from the stay with prejudice "such that any future filings by the debtor or any other person or entity with an interest in the subject property, shall not operate as an automatic stay against [Allfirst] and its successors and/or assigns, except upon

---

1. Allfirst is the successor by merger to Dauphin Deposit Bank and Trust Company, who as Co–Trustee assigned the note and mortgage dated and executed by Randee Feldman on December 23, 1996, to Allfirst via the Pooling and Servicing Agreement, dated February 28, 1997. Allfirst's lien is, apparently, a second mortgage lien, subordinate to that held by JP Morgan.

separate, proper application to the Court." (Allfirst Motion ¶ 13).

The Debtor did not oppose the Allfirst motion, but on January 9, 2004, an Affirmation in Opposition was filed on behalf of Randee. First, Randee argues that the motion should be denied because a bankruptcy court does not have the power to lift the stay with respect to future filings by the Debtor or Randee. The opposition asserts that, under 11 U.S.C. § 362, a stay is automatically imposed upon the filing of a bankruptcy petition and a bankruptcy court cannot, therefore, lift the stay with respect to future filings. Second, Randee submits that the Court does not have proper jurisdiction to issue an order affecting her rights in the Property. Finally, Randee argues that the relief requested should not be granted upon a motion to lift the stay, but rather Fed. R. Bankr.P. 7001(7) requires commencement of an adversary proceeding to obtain injunctive or other equitable relief against a non-debtor.

A hearing on the Allfirst motion took place on January 21, 2004 at which time the motion was taken under submission.

In the meantime, on January 13, 2004, the first mortgagee, JP Morgan Chase, as Trustee ("JP Morgan"), filed a motion also seeking to lift the automatic stay with prejudice against the Debtor, Randee or any other person or entity with an interest in the Property. JP Morgan holds a note and mortgage executed by Randee which granted JP Morgan a security interest in the property.[2] Since December 1, 2000, Randee has failed to comply with the terms of the mortgage which require her to make monthly payments in the amount of $2,420.88 beginning in February 1997. JP Morgan commenced a foreclosure proceeding on March 30, 2001 and obtained a

Judgement of Foreclosure and Sale on October 22, 2003. In accordance with this Judgment, JP Morgan scheduled a foreclosure sale on January 16, 2004. This sale was also stayed by the current Chapter 7 bankruptcy petition filed by the Debtor.

In its motion, JP Morgan describes an abuse of the bankruptcy process undertaken by Randee by repeatedly filing for bankruptcy on the eve of scheduled foreclosure sales, solely to benefit from the automatic stay. Like Allfirst, JP Morgan emphasizes Randee's previous failure to successfully file or complete a Chapter 13 Plan. Finally, JP Morgan notes that since the initial bankruptcy filing on January 25, 2002, they have received only twelve payments from the Debtor and/or Randee.

The Debtor did not oppose the JP Morgan motion, but on January 28, 2004, Randee opposed on the same grounds as presented with respect to the Allfirst motion.

A hearing on the JP Morgan motion took place on February 2, 2004. The Court permitted reply papers to be filed by February 6, 2004, at which time the motion was taken under submission so that the Allfirst and JP Morgan motions could be decided together. Memoranda of law were submitted by both JP Morgan and Randee on the issue of whether the Court can issue prospective relief from the automatic stay with respect to a non-debtor.

## DISCUSSION

### Prospective Relief From the Automatic Stay

■ The first argument interposed by Randee is that an order lifting the automatic stay with respect to future filings by Randee or the Debtor is not within the

---

**2.** The note and mortgage were initially assigned from First Nationwide to The Chase Manhattan Bank, thereafter, assigned to Credit Based Asset Servicing and Securitization, LLC and thereafter assigned to JP Morgan by assignment dated March 4, 2002.

bankruptcy court's power because the Court cannot prospectively issue an order prohibiting the stay from imposing in a future bankruptcy petition. In support of this argument, Randee cites *In re Taylor*, 77 B.R. 237, 240 (9th Cir. BAP 1987), *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992), and *In re Norris*, 39 B.R. 85 (E.D.Pa. 1984).

■ Contrary to the cases cited by Randee, a majority of courts have granted prospective relief from the automatic stay in appropriate circumstances. *See, e.g., In re Hamer*, No. Civ. A 00–1180, 2000 WL 1230496 at *7 (E.D.Pa. Aug.18, 2000); *In re Rowe*, 239 B.R. 44, 54 (Bankr.D.N.J. 1999); *In re Felberman*, 196 B.R. 678, 683 (Bankr.S.D.N.Y.1995); *In re Abdul–Hasan*, 104 B.R. 263, 266–67 (Bankr.C.D.Cal. 1989); *see also In re Greenberg*, 200 B.R. 763, 770 (Bankr.S.D.N.Y.1996) (dismissing Chapter 13 case and limiting effect of the automatic stay in any future bankruptcy case filed). Prospective relief from the automatic stay is appropriate where "serial filers" have abused the bankruptcy process by using the stay to prevent foreclosure without any intention or ability to complete the bankruptcy process. This type of prospective relief does not prevent a debtor from filing another (subsequent) bankruptcy petition.[3] It merely prevents a debtor from relying on the imposition of the automatic stay to forestall a scheduled foreclo-

sure and delay a mortgagee's enforcement of its rights under state law. Nor does prospective relief from the automatic stay prevent a debtor from seeking to reimpose the stay in accordance with applicable bankruptcy rules upon a showing of changed circumstances. *See, e.g., Abdul–Hasan*, 104 B.R. at 267; *Greenberg*, 200 B.R. at 770.

■ Based on the foregoing caselaw and under Section 105 of the Code,[4] this Court believes that it has the power to provide a creditor with prospective relief from the automatic stay where it is clear that a debtor has filed successive bankruptcy petitions to stay foreclosure sales without the intention of completing or without having the ability to complete the bankruptcy process in good faith.[5] The Court finds that the Debtor and his wife, Randee, have abused the protections afforded to them by the bankruptcy process. Together, they have filed three petitions in less than two years. Each of these petitions was filed within days of a scheduled foreclosure with the apparent intention of delaying the foreclosure on their home. The Court bases this finding upon the fact that both Chapter 13 cases filed by Randee were dismissed prior to confirmation of her proposed Chapter 13 plan: the first case was dismissed because she failed to provide documents to the Chapter 13 Trustee as requested; the second case was dismissed

---

**3.** By these statements, the Court does not suggest that a bar to subsequent re-filing is not within the Court's power and appropriate in certain circumstances. *See In re Casse*, 198 F.3d 327 (2d Cir.1999). However, this Memorandum Decision focuses solely on "prejudice" in the form of prospective relief from the automatic stay.

**4.** Section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**5.** Although not directly on point, this conclusion is supported by the Second Circuit's decision in *In re Casse*, 198 F.3d 327 (2d Cir. 1999), which permitted a bankruptcy court to dismiss a bankruptcy petition and bar a debtor from refiling any future bankruptcy petition because of that debtor's abuse of the bankruptcy process. Although the holding is different from that here, the effect of barring a debtor from successive filings to prevent foreclosure is the same.

because she failed to commence making *any* payments to the Chapter 13 Trustee and also failed to attend the § 341 meeting of creditors. Further, the second petition was filed by Randee but two months after the first had been dismissed. Yet, notwithstanding the proximity in time, Randee failed to comply with the most basic of the Chapter 13 requirements by neither attending the § 341 meeting of creditors nor making payments in accordance with her proposed Chapter 13 plan.

Unlike the arguments presented by Randee, the Debtor does not oppose the relief requested by the movants and does not challenge the movants' request for prospective relief as against him. Nor is there any issue with respect to the Court's jurisdiction over him.

The Court recognizes that this is the Debtor's first bankruptcy filing and that the Debtor does appear to have significant tax and other personal liability on certain corporate debts to be addressed in the Chapter 7 bankruptcy case. Nonetheless, the timing of the Debtor's filing the day before the scheduled foreclosure sale is highly suspect to the extent that the filing affects the movants' foreclosure proceeding in state court.

When taken together with Randee's prior abuse of the bankruptcy process, the timing of the Debtor's filing provides a basis for the Court to infer that the Debtor and Randee were acting in concert to frustrate the movants' foreclosure efforts and to impute the prior abusive filings by Randee upon the Debtor. Where family members have commenced multiple filings to prevent foreclosure sale, courts have imputed the actions of each family member to the others. *See In re Kinney*, 51 B.R. 840 (Bankr.C.D.Cal.1985); *see also Hamer*, 2000 WL 1230496 at *8 (finding that "[i]n cases where ... spouses have an interest in a single property subject to

foreclosure, courts have imputed the filings of one spouse to the other"); *In re Graham*, No. 98–11990, 1998 WL 473051 at *2 (Bankr.E.D.Pa. Aug.3, 1998) (agreeing that "there are cases which hold that multiple filings by different people with an interest in one property can be imputed to every filer in the scheme"); *In re Ouverson*, 79 B.R. 830 (Bankr.N.D.Iowa 1987) (finding that "the actions of the Debtor and her husband can be imputed to each other because of the unity of interest (preventing foreclosure) and concert of action."); *Kinney*, 51 B.R. at 845–46 (same). In *In re Kinney*, the court concluded that 11 U.S.C. § 105(a) enabled it to bind parties not before the court when a "scheme is demonstrated by strong and clear evidence." *Kinney*, 51 B.R. at 846. This proposition has also been applied to instances involving multiple filings by a husband and wife to prevent foreclosure of a home. *See Felberman*, 196 B.R. at 684; *Ouverson*, 79 B.R. at 833; *In re Wong*, 30 B.R. 87, 89 (Bankr.C.D.Cal.1983).

█ For all these reasons, then, in order to maintain the integrity of bankruptcy process and prevent the Feldmans' continued frustration of mortgage foreclosure attempts, the automatic stay will be lifted prospectively such that any future bankruptcy filing *by the Debtor* within 180 days from the date of the Order shall not act as a stay with respect to Allfirst and/or JP Morgan's attempt to foreclose on the Property. Because the Debtor may have had legitimate reasons for filing his Chapter 7 petition, however, the Court does not believe that the Debtor's bankruptcy case should be dismissed.

█ Prospective relief from the automatic stay as against the non-debtor, Randee, presents separate jurisdictional issues which are addressed below.

### In Rem Jurisdiction Over the Property

Randee argues that the Court cannot lift the stay prospectively with respect to future filings by her (as a non-debtor) because the Court lacks jurisdiction over her.

 An Order affecting a non-debtor's interest in certain property may be validly entered if the Court has personal jurisdiction over the non-debtor or *in rem* jurisdiction (subject matter jurisdiction) over the property. *Cf. In re Price*, 304 B.R. 769 (Bankr.N.D.Ohio 2004) (finding that *in rem* orders for relief from stay against non-debtors "do not require that the property co-owners or transferees be subject to the court's jurisdiction."). While a debtor submits to the jurisdiction of the bankruptcy court by filing a petition, *see In re Tornheim*, 181 B.R. 161, 167 (Bankr.S.D.N.Y.1995), no such jurisdiction is invoked over a non-debtor spouse.

Courts have consistently found that *in rem* jurisdiction obtains where a debtor shares a common ownership interest with the non-debtor in the real property, such that the property becomes "property of the estate" under Section 541 of the Code. By virtue of this *in rem* jurisdiction, courts have lifted the stay prospectively as to any future bankruptcy filing by the debtor *or any other party with an interest in the real property* in order to prevent abusive filings by co-owners intended solely to delay foreclosure on commonly held property. *See In re Roeben*, 294 B.R. 840, 847 (Bankr.E.D.Ark.2003) ("In rem orders are responses to serial filing involving more than one debtor with an interest in property that the debtors are seeking to protect from foreclosure proceedings").

The distinction between this case and those having *in rem* jurisdiction is that, in this case, the Debtor does not *own* the property at issue. Consequently, the Property securing the movants' notes and mortgages is *not* property of the estate.

While the Debtor's possessory interest in the Property is sufficient to invoke the protections of 11 U.S.C. § 362, it is not equivalent to *in rem* jurisdiction and does not in and of itself provide a basis for this Court to exercise *in rem* jurisdiction over the Property. For these reasons, this Court has no *in rem* jurisdiction over the Property. To the extent that the movants' requests for prospective relief from the automatic stay as to Randee are based upon *in rem* jurisdiction, their motions are denied.

### Personal Jurisdiction Over Randee

 Finally, Randee argues that the request for injunctive relief against her is procedurally flawed because JP Morgan and Allfirst failed to commence adversary proceedings. She asserts that Fed. R. Bank. P. 7001(7) requires the commencement of an adversary proceeding to obtain injunctive or other equitable relief against a party and because both movants failed to do so, their motions are therefore procedurally defective.

Although Randee has framed this as a procedural issue, the Court believes that it is also jurisdictional. There is no dispute that Randee has not voluntarily submitted to the jurisdiction of this Court in this case. She did not file a proof of claim, *see Langenkamp v. Culp*, 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1991), and in filing her opposition, she was careful to assert that she was not submitting to the jurisdiction of the Court notwithstanding her opposition. Thus, in order to obtain jurisdiction over a non-debtor who is not a co-owner of property of the estate, an adversary proceeding must be commenced by service of a summons and complaint. *See* Fed. R. Bankr.P. 7004; *see also In re Roeben*, 294 B.R. 840, 845 (Bankr.E.D.Ark. 2003); *Graham*, 1998 WL 473051 at *1.

By filing an adversary proceeding, the concerns of due process and notice are addressed and an opportunity to be heard is provided. *See In re Fernandez*, 212 B.R. 361, 371 (Bankr.C.D.Cal. 1997). The Court recognizes that, to a limited extent, due process concerns are addressed in 11 U.S.C. § 362(d) which requires that relief from stay be granted only after notice and a hearing. 11 U.S.C. § 362(d). For example, the *Fernandez* court pointed out that "the phrase 'after notice and a hearing' as used in the Bankruptcy Code means 'after such notice as is appropriate in the particular circumstances.'" *Id.* at 370. In finding that an adversary proceeding need not be commenced in order to enter prospective relief from stay as to a non-debtor, the *Fernandez* court reasoned,

> While notice and an opportunity to be heard are fundamental to our concept of justice, there may come a point when common sense and equitable principles should step in to limit a debtor's right to the protections afforded by the automatic stay of § 362(a).

*Fernandez*, 212 B.R. at 371. In the instant case, if the Court had *in rem* jurisdiction over the Property, it would agree that due process concerns were satisfied by service of the motion upon the non-debtor. However, where the Court does not have *in rem* jurisdiction over the Property and does not have *in personam* jurisdiction over the non-debtor, the Court finds that an adversary proceeding must be filed in order to obtain *in personam* jurisdiction over the non-debtor.[6]

Despite the Court's conclusion that prospective relief from the automatic stay should not be entered against Randee on jurisdictional grounds, the Court will carefully scrutinize any future bankruptcy petition by Randee for any indicia of bad faith, particularly if it is filed on the eve of a scheduled foreclosure sale of the Property. Such scrutiny is warranted by Randee's past filings on the eve of foreclosure; by her failure to commence payments to the Trustee in the second case; by her failure to attend and close the § 341 Meeting of Creditors in the second case; by her failure to comply with the disclosure requirements of E.D.N.Y. L.B.R.2003–1 in the second case; and by her failure to proceed to confirmation in both cases.

### CONCLUSION

For all of the foregoing reasons, the motions for relief from stay by Allfirst and JP Morgan are granted with respect to the Debtor, with prejudice, and denied with respect to Randee, without prejudice to seeking appropriate relief upon commencement of an adversary proceeding against Randee. The Court will enter appropriate Orders coincident with this Decision.

---

6. It goes without saying that a summons and complaint must also be served in accordance with all applicable bankruptcy rules. *See* Fed. R. Bankr.P. 7001, et seq.